# United States Court of Appeals for the Federal Circuit

---

**WADE THOMPSON,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7017

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-1633, Judge Lawrence B. Hagel.

---

Decided: March 8, 2016

---

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for claimant-appellant. Also represented by CARA R. LASSWELL, RONALD LEE SMITH.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR., ERIC PETER BRUSKIN; DAVID J. BARRANS, MARTIE ADELMAN, Office of

General Counsel, United States Department of Veterans Affairs, Washington, DC.

CHRISTY G. LEA, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, for amicus curiae Disabled American Veterans. Also represented by ZACHARY GLANTZ.

––––––––––––––––

Before NEWMAN, PLAGER, and REYNA, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This is a veterans case. Wade G. Thompson appeals a judgment of the Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("Board") denying Thompson a disability rating in excess of 20% for degenerative disc disease of the lumbar spine prior to March 8, 2011. The Veterans Court's decision was based in part upon its interpretation of 38 C.F.R. § 4.40 in light of § 4.71a.

Thompson's appeal raises a question of first impression: Does § 4.40 provide a basis for a rating separate from § 4.71a? The answer is no; we affirm the judgment of the Veterans Court.

BACKGROUND

Regulatory Framework

The Schedule for Rating Disabilities, 38 C.F.R. part 4, is divided into two subparts: Subpart A "General Policy in Rating" and Subpart B "Disability Ratings." Subpart B contains several headings, including "The Musculoskeletal System," "The Digestive System," and "The Respiratory System." Under each such heading, there is at least one section specifying disability ratings relevant to that particular heading.

Under the musculoskeletal system heading, at issue here, there are two sections that explicitly list ratings, 38 C.F.R. §§ 4.71a ("Schedule of ratings—musculoskeletal system") and 4.73 ("Schedule of ratings—muscle injuries"). In addition to these ratings sections, there are several sections that do not explicitly list ratings but discuss general principles concerning ratings for the musculoskeletal system or particular parts thereof. *See, e.g., id.* §§ 4.40 ("Functional loss"), 4.41 ("History of injury"), 4.42 ("Complete medical examination of injury cases"), 4.43 ("Osteomyelitis"), 4.45 ("The joints"), 4.46 ("Accurate measurement").

Section 4.40, entitled "Functional loss," states:

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like.

*Id.* § 4.40.

One of the two specific ratings sections, § 4.71a, addresses the spine and dictates that a veteran is entitled to a 20% disability rating if there is forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, *or* if the combined range of motion of the thoracolumbar spine is not greater than 120 degrees. *Id.* § 4.71a. A veteran is entitled to a higher, 40% rating if there is forward flexion of the thoracolumbar spine of 30 degrees or less. *Id.* Section 4.71a also allows for a 20% or 40% disability rating—along with several other ratings—under several other circumstances not at issue here. *Id.* Under § 4.71a, all of these ratings result "[w]ith or without symptoms such as pain (wh[e]ther or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease." *Id.*

### Thompson's Case

We detail the background of Thompson's case only as necessary. A more complete background is set forth in the opinion of the Veterans Court. *See Thompson v. McDonald*, No. 13-1633, 2014 WL 4239747 (Vet. App. Aug. 28, 2014). In brief, Thompson served in the United States Marine Corps from May 1992 to November 1993. He sustained a back injury while on active duty and was honorably discharged for medical reasons in 1993.

On March 28, 2008, the Department of Veterans Affairs ("VA") received Thompson's claim for disability benefits for low-back disability. As a result of a series of VA Regional Office ("RO") decisions, Thompson was assigned a 20% rating for service connected degenerative disc disease of the lumbar spine, applicable for the period from June 1, 2008 to March 8, 2011.

Thompson disagreed with the 20% rating, and appealed to the Board. The Board denied Thompson entitlement to a rating in excess of 20%. As a factual finding, the Board determined: "Prior to March 8, 2011, the Veter-

an's service connected degenerative disc disease of the lumbar spine did not cause forward flexion of the thoracolumbar spine of 30 degrees or less . . . ." J.A. 23. The Board stated that "forward flexion of the thoracolumbar spine was not 30 degrees or less, even considering limitation caused by pain, fatigue, and other factors." J.A. 33. The Board observed that, upon examination, Thompson had forward flexion of the lumbar spine from 0 to 65 degrees, with pain throughout the range of motion, and that, after repeated testing, forward flexion was only from 0 to 50 degrees.

The Board reasoned that, under *Mitchell v. Shinseki*, 25 Vet. App. 32 (2011), pain, by itself, does not constitute a functional loss entitling a veteran to a higher rating "under VA regulations that evaluate disability based upon range-of-motion loss in the musculoskeletal system." J.A. 33. The Board quoted the statement in *Mitchell* that "'pain must affect some aspect of the normal working movements of the body such as excursion, strength, speed coordination, and endurance in order to constitute functional loss.'" J.A. 33–34 (quoting *Mitchell*, 25 Vet. App. at 43). The Board concluded that Thompson's pain failed to cause "sufficient functional impairment to limit the flexion of the thoracolumbar spine to 30 degrees or less, as is required for a higher rating under the General Rating Formula for Diseases and Injuries of the Spine." J.A. 34.

As a legal conclusion, the Board determined that: "The criteria for an initial disability rating in excess of 20 percent for service connected degenerative disc disease of the lumbar spine prior to March 8, 2011 have not been met." J.A. 23. In support of that conclusion, the Board cited 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a; and Diagnostic Codes 5003, 5010, 5235–5243. As the Board viewed it, the discussion of functional loss under § 4.40 did not super-

sede the requirements for a higher rating specified in § 4.71a.

On appeal to the Veterans Court, Thompson argued that the Board erred in relying on loss of motion under § 4.71a to determine his rating without additionally taking into account functional loss due to pain as discussed in § 4.40. After granting Thompson's motion for reconsideration of its initial decision, the Veterans Court ultimately affirmed the Board's decision.

The court reasoned that, because the conceded additional functional loss due to pain did not limit Thompson's forward flexion to 30 degrees or less, it did not warrant a higher rating. The court stated:

> Mr. Thompson is correct in his assertion that "range of motion ratings under § 4.71a do 'not subsume 38 C.F.R. § 4.40,' and '38 C.F.R. § 4.14 does not forbid consideration of a higher rating based on a greater limitation of motion due to pain on use including during flare-ups.'" Mot. for Reconsideration at 3 (quoting *DeLuca* [*v. Brown*, 8 Vet. App. 202, 205–06 (1995)]). Nevertheless, despite Mr. Thompson's assertions that the [Veterans Court's] finding runs afoul of *DeLuca* because it "appears to state that the ratings in 38 C.F.R. § 4.71a adequately consider functional loss due to pain," Mot. for Reconsideration at 2, the [Veterans Court's] finding here is simply that the Board did not err in finding that the *conceded additional functional loss* due to pain is not compensable above and beyond the disability rating already assigned. In other words, because the additional functional loss due to pain is not severe enough to limit Mr. Thompson's forward flexion to 30 degrees or less, it does not warrant a 40% disability rating. It appears that Mr. Thompson would have the [Veterans Court] ignore the express language

> he quotes from *DeLuca*: "consideration of a higher rating based on a greater limitation of motion due to pain." *DeLuca*, 8 Vet. App[.] at 205–06 [sic]. Here, a higher rating based on greater limitation of motion due to pain is not warranted because the limitation of motion due to pain does not rise to the level necessary for a 40% disability rating.

J.A. 13.

The Veterans Court entered judgment based on its decision, and Thompson appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292.

## DISCUSSION

Our review of Veterans Court decisions is limited by statute. *See* 38 U.S.C. § 7292. We possess "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." *Id.* § 7292(c). We must decide all relevant questions of law and hold unlawful and set aside regulations or interpretations thereof—besides factual determinations—that were relied upon in the Veterans Court decision and are "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." *Id.* § 7292(d)(1). We may not review a challenge to a factual determination or law or regulation as applied to the facts, unless a constitutional issue is presented. *Id.* § 7292(d)(2). We review Veterans Court decisions regarding issues of law without deference. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009).

"To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning." *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979) and *Rio Hondo Mem'l Hosp. v. United States*, 689 F.2d 1025, 1034 n.11 (Ct. Cl. 1982)).

Section 4.40 speaks generally in terms of disability of the musculoskeletal system, and explains what may cause a functional loss. The section defines disability of the musculoskeletal system as "primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance." 38 C.F.R. § 4.40.

Section 4.40 also mandates that "a part which becomes painful on use must be regarded as seriously disabled." *Id.* Yet, the section provides no explicit rating for such disability. Instead, the section explains that "functional loss . . . may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion." *Id.* It also explains that "[w]eakness is as important as limitation of motion." *Id.*

In discussing disability of the musculoskeletal system, the section focuses on the "normal working movements of the body" in terms of several elements, including normal excursion. The section also mentions pain. It speaks to pain (in terms of use) as capable of rendering a part of the musculoskeletal system or body seriously disabled. However, despite its discussion of pain, disability, and functional loss, § 4.40 never explicitly lists any actual disability ratings.

We read the words of a regulation in their context and with a view to their place in the overall regulatory scheme. *See Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015) (noting that we apply the

same interpretive rules for analyzing regulations that are used for analyzing statutes); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (noting that the words of a statute are read in context and with respect to the overall statutory scheme). *See also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988).[1]  Based upon our prior discussion of the regulatory framework, it is clear that § 4.40 must be viewed in light of the explicitly listed disability ratings for the musculoskeletal system in § 4.71a.

Read together, the absence of any explicit ratings in § 4.40 makes sense.  In promulgating 38 C.F.R. part 4, the VA carefully located § 4.40 and similar guidance under the umbrella heading of the musculoskeletal system.  The VA also clearly included separate sections explicitly listing relevant disability ratings. *See* 38 C.F.R. §§ 4.71a, 4.73.  Given this regulatory framework, it is clear that the guidance of § 4.40 is intended to be used in understanding the nature of a veteran's disability, after which a rating is determined based on the § 4.71a criteria.

This is confirmed by the language of § 4.40 itself.  That section focuses upon disability in terms of the body's "normal working movements."  This is understandable in light of the range of motion thresholds in the relevant portion (dealing with the spine) of § 4.71a.  Indeed, the relevant portion of § 4.71a addresses the spine and pro-

---

[1]  As Justice Scalia observed in writing for the Court, statutory construction is a holistic endeavor; a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Timbers*, 484 U.S. at 371.

vides for disability ratings "[w]ith or without" pain, but contains no mention of "functional loss" as such. *Id.* § 4.71a. Section 4.40, as discussed above, makes clear that disability may occur if a veteran cannot perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Section 4.40 also makes clear that functional loss may be due to pain and that pain may render a part seriously disabled. When evaluating a disability, § 4.40 provides a broad canvas. However, whatever the background, an applicant for disability benefits is rated based on the criteria set forth in § 4.71a.

So understood, the Veterans Court's legal interpretation in this case was proper. Because there is no error of law in the Veterans Court's judgment, and because we cannot review the court's application of the law to the facts, we must affirm.[2]

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Veterans Court.

**AFFIRMED**

COSTS

No costs.

---

[2] In view of our analysis and disposition of this case, we need not address other arguments presented by the parties.