﻿Citation Nr: AXXXXXXXX
Decision Date: 09/29/20 Archive Date: 09/29/20

DOCKET NO. 191209-48658
DATE: September 29, 2020

ORDER

The 60-percent rating for a chronic lumbosacral strain with intravertebral disc syndrome with (IVDS) is restored, effective January 1, 2020, subject to the law and regulations governing payment of monetary benefits.

FINDING OF FACT

The Veteran’s chronic lumbosacral strain with IVDS did not materially improve under the ordinary conditions of daily life and work from January 1, 2020.

CONCLUSION OF LAW

The reduction from 60 percent to 20 percent for chronic lumbosacral strain with IVDS was not warranted; the criteria for restoration of a 60 percent rating for the disability, from January 1, 2020, have been met. 38 U.S.C. §§ 1155; 38 C.F.R. §§ 3.105, 3.344, 4.2, 4.10, 4.13. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1982 to June 1985.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an October 8, 2019 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Los Angeles, California.

The Veteran timely appealed this Appeals Modernization Act (AMA) rating decision to the Board and requested Direct Review of the evidence considered by the Agency of Original Jurisdiction (AOJ). Based on the Veteran’s choice to pursue a direct review of his appeal, the Board will decide the appeal “based on the evidence of record at the time of the prior decision,” in this case, the October 2019 rating decision. 

Rating Reduction

There is no question that a disability rating may be reduced; however, the circumstances under which rating reductions can occur are specifically limited and carefully circumscribed by regulations promulgated by the VA Secretary. Dofflemyer v. Derwinski, 2 Vet. App. 277, 280 (1992). In Brown v. Brown, 5 Vet. App. 413, 420 (1993), the U.S. Court of Appeals for Veterans Claims (Court) interpreted the provisions of 38 C.F.R. § 4.13 to require that in any rating reduction case it must be ascertained, based upon a review of the entire recorded history of the disorder, whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based upon thorough examinations. Moreover, 38 C.F.R. §§ 4.2 and 4.10 provide that in any rating reduction case, not only must it be determined that an improvement in a disability has actually occurred, but also that improvement in a disability actually reflects improvement in the veteran’s ability to function under the ordinary conditions of life and work.

When the evidence indicates that a disability has stabilized to the point that a particular rating has continued for a long period of time (five years or more), and an examination indicates improvement in the disability, the rating agency must review the entire record of examinations and the medical-industrial history in order to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history. Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. In arriving at a determination that there is material improvement in a physical or mental disability, the rating agency must consider whether the improvement will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344.

The provisions of 38 C.F.R. § 3.344(a) and (b) apply to ratings which have continued for long periods at the same level (five years or more). They do not apply to disabilities which have not become stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant a reduction in rating. 38 C.F.R. § 3.344(c). 

In an October 2016 rating decision, the AOJ granted service connection at 60 percent disabling for the Veteran’s chronic lumbosacral strain with IVDS, effective July 27, 2016. 

The AOJ then proposed to reduce the 60 percent rating to 20 percent in a July 2019 rating decision. In a July 2019 letter, the Veteran was given due process notice of the proposed reduction in the rating for his chronic lumbosacral strain with IVDS. The letter also apprised him of his right to submit additional evidence to contest the reduction and request a pre-determination hearing. The AOJ therefore complied with the provisions of 38 C.F.R. § 3.105(e). 

In an October 2019 rating decision, the AOJ effectuated the proposed reduction and assigned a 20 percent rating for the Veteran’s chronic lumbosacral strain with IVDS, effective January 1, 2020, the first day of the month after the 60-day notification period of this decision. The Veteran perfected an appeal as to this reduction. 

The Board must now decide whether the reduction from 60 percent to 20 percent was proper. Since the 60 percent rating in this case was in effect from July 27, 2016, to December 31, 2019, a period of less than five years, the provisions of 38 C.F.R. § 3.344 are not applicable. See Brown, 5 Vet. App. at 417. 

The Veteran’s service-connected lumbar spine disability with IVDS is evaluated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5243. Under DC 5243, the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 20 percent rating is warranted for incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months. A 40 percent disability rating is warranted for incapacitating episodes having a total duration of at least four weeks, but less than six weeks during the past 12 months; and a 60 percent disability rating is warranted for incapacitating episodes having a total duration of at least six weeks during the past 12 months. 38 C.F.R. § 4.71a. An "incapacitating episode" for purposes of totaling the cumulative time is defined as "period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, DC 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 1.

The Notes following the General Rating Formula for Diseases and Injuries of the Spine provide further guidance in rating diseases or injuries of the spine. Note (2) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See Plate V, 38 C.F.R. § 4.71a. Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a.

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

In Correia v. McDonald, 28 Vet. App. 158 (2016), the U.S. Court of Appeals for Veterans Claims (Court) held that the final sentence of 38 C.F.R. § 4.59 requires that the examiner record the results of range of motion testing “for pain on both active and passive motion [and] in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint.” The spine has no opposite joint.

In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that VA examiners must obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves, when a flare-up is not observable at the time of examination.

The Board is aware that it must make its determination as to whether improvement had been shown between (1) the medical evidence of record at the time of the October 2016 rating decision that granted the 60 percent rating for the Veteran’s chronic lumbosacral strain with IVDS, and (2) the medical evidence used to reduce the disability rating to 20 percent in the October 2019 rating decision. After comparing the evidence, the Board finds that the AOJ’s decision to reduce the Veteran’s disability rating from 60 percent to 20 percent was not warranted. Hence, the 60 percent rating for the chronic lumbosacral strain will be restored. 38 C.F.R. § 4.71a, Diagnostic Code 5243.

The evidence used to grant the 60 percent rating for the Veteran’s chronic lumbosacral strain with IVDS includes VA treatment records and a VA examination. Specifically, at the August 2016 VA examination, the Veteran’s lumbar spine disability was manifested by episodes of bed rest having a total duration of at least 6 weeks during the past 12 months. This determination was made based on medical history as described by the Veteran only and without documentation. Based on this evidence, in the October rating decision, the AOJ assigned a 60 percent disability rating for the chronic lumbosacral strain with IVDS. 

The Board must now compare the above findings, which were the basis for granting a 60 percent rating, with the evidence used to reduce the Veteran’s disability rating to 20 percent in the October 2019 rating decision to determine whether his service-connected chronic lumbosacral strain with IVDS “improved.” The evidence for consideration includes VA treatment records and VA examinations.

In an April 2018 VA spine examination, the Veteran reported flare-ups, functional loss, and functional impairment of the thoracolumbar spine at the examination. He reported that his flare ups had become so frequent and he had spasms that cause an inability to walk for 5 days or more. When asked about additional factors contributing to the Veteran’s disability, the examiner stated that the Veteran had less movement than normal due to ankylosis, pain on movement, and pain on active and passive movement. However, the examiner then found that the Veteran did not have ankylosis of the spine. The examiner found that the Veteran’s lumbar spine disability was manifested by episodes of bed rest having a total duration of at least 2 weeks but less than 4 weeks during past 12 months. This determination was made based on medical history as described by the Veteran only and without documentation. 

The Veteran was provided another VA spine examination in May 2019. The Veteran reported flare-ups, functional loss, and functional impairment of the thoracolumbar spine at the examination. He reported flare-ups that can last all day to a few hours with no warning, and cause spasms, numbness, inability to walk, stand and prohibits him from functioning. The VA examiner determined that the Veteran did not have ankylosis of the spine but did not address the conflicting evidence provided at the previous examinations. The May 2019 VA examiner also did not adequately address the Veteran’s flare-ups and functional loss in the context of ankylosis. Regarding flare-ups and repeated use over time, the examiner was unable to say without mere speculation whether pain, weakness, fatigability or incoordination could significantly limit functional ability with flare-ups and with repeated use over time. 

The Veteran was provided another VA spine examination in September 2019. The Veteran reported flare-ups, functional loss, and functional impairment of the thoracolumbar spine at the examination. He reported flare-ups that require trips to the emergency room every three months and weekly or monthly flare ups that are moderate to severe that last several days. The VA examiner determined that the Veteran did not have ankylosis of the spine. There are no other examinations of record. The VA treatment records do not provide evidence contrary to that obtained at the examinations. 

The Board is not persuaded, based on these VA treatment records and VA examinations, that the Veteran’s chronic lumbosacral strain with IVDS sufficiently improved to warrant a reduction from 60 percent to 20 percent. Specifically, the August 2016 VA examination, the Veteran’s lumbar spine disability was manifested by episodes of bed rest having a total duration of at least 6 weeks during the past 12 months, the May 2019 and September 2019 examinations do not. The May 2019 and September 2019 VA examinations do not adequately discuss the effect of the Veteran’s flare-ups and functional impairment and neither addressed the Veteran’s November 2018 x-rays. The Veteran’s initial examination determining incapacitating episodes of bed rest were based on the Veteran’s testimony as opposed to medical documentation. The Veteran reported multiple flare ups weekly and/or monthly that lasted hours to days and of such severity as to frequently require emergency room visits and cause spasms, numbness, inability to walk, stand and prohibits him from functioning. The basis for the initial grant was the Veteran’s reporting of medical history; there is no evidence, Veteran’s reporting or medical documentation in subsequent examinations or records that are contrary to what was reported in the April 2016 VA examination that would warrant a reduction in the Veteran’s rating.

The Board finds that the evidence is at least in equipoise as to whether the Veteran’s lumbar spine has been manifested by episodes of bed rest having a total duration of at least 6 weeks during the past 12 months. Therefore, in giving the Veteran the benefit of the doubt, the Board finds that the aforementioned evidence warrants a 60 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5243.

Under these circumstances, the Board cannot conclude that the preponderance of the evidence shows a material improvement in the Veteran’s service-connected chronic lumbosacral strain with IVDS that is reasonably certain to be maintained under the ordinary conditions of life. Accordingly, the Veteran is entitled to restoration of the 60 percent rating for his service-connected chronic lumbosacral strain, effective January 1, 2020. The claim is granted.

 

 

MARJORIE A. AUER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Kelsey Love, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.